# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RORY LEFTWICH, #1029673, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. CCB-17-274 |
| RICKY FOXWELL and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents. | * | |

\*\*\*

## **MEMORANDUM**

Rory Leftwich, currently confined at the Maryland Correctional Training Center in Hagerstown, Maryland, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. The petition challenges Leftwich's 2011 conviction in the Circuit Court for Howard County, Maryland for fourth-degree burglary, theft under $1,000, and rogue and vagabond. *Id.* The Attorney General filed a response arguing that the petition should be denied on the merits. ECF No. 8. Subsequently, Leftwich filed a reply to the response (ECF No. 11), as well as a motion for appropriate relief (ECF No. 13).

The court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Leftwich's petition will be dismissed and his motion for appropriate relief will be denied.[1] A certificate of appealability will not issue.

---

[1] Leftwich also has filed a motion for appointment of counsel (ECF No.12), which shall be denied. There is no Sixth Amendment right to counsel to pursue a petition for habeas corpus. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). A court may provide counsel for an indigent inmate pursuing a petition for habeas corpus if "the court determines that the interests of justice so require." 18 U.S.C. § 3006A(2)(B). Rule 6(a) of the *Rules Governing § 2254 Cases* provides that a court may appoint counsel if it is "necessary for effective discovery," while Rule 8(c) mandates that counsel be appointed "[i]f an evidentiary hearing is required." In this matter, Leftwich has adequately presented his claims, discovery is not warranted, and an evidentiary hearing is not necessary.

# BACKGROUND

**I.  Trial**

The facts at Leftwich's jury trial in the Circuit Court for Howard County, as adduced by the Court of Special Appeals of Maryland, are summarized as follows. Early in the morning on November 17, 2010, Detective Brown of the Harford County Sherriff's Department conducted surveillance of Leftwich's residence in Edgewood, Maryland. ECF No. 8-2 at 7. [2] At approximately 12:20 a.m., Detective Brown observed Leftwich's pick-up truck depart from the residence and proceed on Maryland Route 152 near the intersection of Interstate 95. *Id.* at 7. Detective Brown followed the truck as it traveled south on Interstate 95, west on Interstate 695, Interstate 70, Maryland Route 29, and west on Maryland Route 99 into Howard County, before heading down a "no outlet" street. *Id.* at 7-9. After waiting for about 10 minutes, Detective Brown saw the truck, driven by Leftwich, return to Maryland Route 99. *Id.* Leftwich continued to turn onto nearby streets, disappearing for 10 to 29 minutes at a time. *Id.* Detective Brown saw no other passengers in the truck, but observed bags and packages in the passenger seat. *Id.* at 7, 11.

Detective Brown followed the truck as it returned to Edgewood in Harford County. *Id.* at 11. Along the way, the truck made three stops at gas stations, where Leftwich exited the vehicle and used a credit card to pay for gas. *Id.* Detective Brown called ahead to another detective, who arrested Leftwich when he reached his residence. *Id.* Detective Brown then executed a search and seizure warrant for Leftwich's truck and person, and seized over fifty items. *Id.*

On the morning of November 17, 2010, Corporal Raymond Conner of the Howard

---

[2]  All exhibits referenced were filed by respondents and are docketed at ECF No. 8. Leftwich did not file any exhibits. Citations are to the pagination found on the Court's electronic docket.

County Police Department arrived at Leftwich's residence after receiving a call that "Harford County had some property pertaining to some addresses in Howard County." ECF No. 8-2 at 25. After conducting a brief review of the seized property, Corporal Conner believed that the property belonged to Howard County residents. *Id.* He then contacted the likely owners to ask them to claim their property. *Id.*

Seven Howard County residents testified that on November 17, 2010, upon inspection of their vehicles, they discovered that several items were missing. *Id.* at 13-23. Some of those residents identified the missing articles from photographs of the items seized from Leftwich on the morning of his arrest. *Id.* at 19-23.

Leftwich did not testify at trial. ECF No. 1 at 2. The jury convicted him of six counts of theft under $1,000, seven counts of rogue and vagabond, and two counts of fourth-degree burglary. ECF No. 8-2 at 5. He was sentenced to serve a total of 21 years in prison, or one sentence of three years' imprisonment as to each of the seven victims. *See id* at 5 n.2.

## II. Direct Appeal

Leftwich raised two issues on appeal to the Court of Special Appeals of Maryland: 1) whether the evidence was sufficient to sustain his convictions for fourth-degree burglary and rogue and vagabond; and 2) whether he was improperly convicted of both fourth-degree burglary and theft based on the same acts with respect to two victims. ECF No. 8-2 at 5. By unreported opinion filed on December 4, 2012, the Court of Special Appeals affirmed all but two of Leftwich's convictions, making no impact on the sentence as imposed. *Id* at 47. Leftwich then

filed a petition for a writ of certiorari, which the Court of Appeals of Maryland denied on March 26, 2013. *See* ECF No. 8-1 at 17.[3]

### III. Post-Conviction

On July 5, 2012, while his direct appeal was pending in the Court of Special Appeals, Leftwich filed a pro se petition for post-conviction relief in the Circuit Court for Howard County and raised these allegations of error:

(A) trial counsel rendered ineffective assistance with respect to 18 issues and faced a conflict of interest;

(B) the trial court made prejudicial comments in the presence of the jury;

(C) the prosecution employed improper pre-trial and trial tactics; and

(D) appellate counsel was ineffective for failing to raise all relevant issues on appeal.

ECF No. 8-3 at 7-21. On February 13, 2013 and August 12, 2013, Leftwich filed pro se supplements to his post-conviction petition. ECF No. 8-1 at 16-17. On February 7, 2014, Leftwich filed an additional supplement through counsel, raising a single issue: that trial counsel rendered ineffective assistance by incorrectly informing him that the State's key witness would not be present to testify, thus prompting him to reject the State's plea offer and elect to proceed to trial. *See id.* at 18; ECF No. 8-8 at 21. In total, Leftwich raised 56 allegations in his petition for post-conviction relief, including those raised in supplements. *See id* at 3-21.

The circuit court heard Leftwich's post-conviction petition on December 19, 2013, March 6, 2014, June 2, 2014, and June 9, 2014. *See* ECF No. 8-1 at 18-19. By order entered on April

---

[3] Respondents incorrectly state that "Leftwich did not file a petition for writ of certiorari" to the Court of Appeals. ECF No. 8 at 6-7. Nonetheless, they concede that "Leftwich's petition need not be dismissed for failure to satisfy the exhaustion requirement set forth in 28 U.S.C. § 2254 (b)-(c)" because "whether or not Leftwich has presented his current contentions to all appropriate state courts, he no longer has direct appeal or state post-conviction remedies available with respect to the claims that he now raises in this Court." *Id.* at 11-12.

8, 2015, the Circuit Court for Howard County denied Leftwich post-conviction relief. ECF No. 8-7.

Subsequently, Leftwich filed an application for leave to appeal the denial of his post-conviction petition, raising the following claims:

(A) the post-conviction court erred when it disregarded evidence that was obtained in violation of Leftwich's Fourth, Fifth, Sixth, and Fourteenth Amendment rights and which was used to procure his arrest and conviction;

(B) the post-conviction court erred when it disregarded evidence of Leftwich's illegal arrest, which was made without probable cause and which provided an illegal pre-trial identification;

(C) the post-conviction court erred in failing to conclude that the jury polling procedure employed in Leftwich's trial was unconstitutional;

(D) the post-conviction court erred in failing to conclude that Leftwich's sentence is violative of the Fifth Amendment; and

(E) the post-conviction court erred in failing to conclude that Leftwich's trial counsel was constitutionally ineffective by: (1) failing to communicate all plea offers; (2) failing to prepare pre-trial sentencing guidelines for comparison purposes; and (3) providing false and/or incorrect and/or misleading advice concerning the strength and weakness of the State's case.

ECF No. 8-9 at 7-8. On July 11, 2016, the Court of Special Appeals issued a mandate denying Leftwich's application for leave to appeal. ECF No. 8-10.

## CLAIMS PRESENTED

In Leftwich's federal petition for habeas corpus relief, he claims ineffective assistance on the part of his trial attorney. *See* ECF No. 1 at 7. First, Leftwich alleges that trial counsel's incorrect advice concerning the State's evidence and witnesses "was misleading and constitutionally prejudicially deficient," and hindered his ability to make a knowing and intelligent decision as to whether he should accept the plea offer. ECF No. 1 at 7. Second,

5

Leftwich contends that during the plea bargaining stage, his defense counsel "failed to prepare pretrial sentencing guidelines and communicate and/or effectively advise the petitioner his risk exposure to incarceration via the applicable guidelines." *Id.* Accordingly, Leftwich argues that the post-conviction court erred in denying him post-conviction relief, and likewise, the appellate court erred in denying his application for leave to appeal. *See id.* at 8.

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("Act"), sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). In order to obtain relief on his ineffectiveness claims, the petitioner must show that the adjudication of such claims at the state court level:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Act further provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* (emphasis and citation omitted).

## DISCUSSION

Leftwich argues that his trial counsel rendered constitutionally ineffective representation by: (1) giving incorrect information concerning the State's evidence which hindered his ability to make a knowing and intelligent decision regarding the plea offer; and (2) failing to effectively prepare, communicate, and advise him of the applicable sentencing guidelines. When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that "counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Representation is deficient if it falls below "an objective standard of reasonableness." *Id.* at 688. To satisfy this first prong, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687 (citations omitted). The standard for assessing such competence is "highly deferential" and has a

7

"strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 689. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. A defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

A showing of prejudice requires that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland,* 466 U.S. at 694. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id*. at 686. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 695-6. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Leftwich's claims of ineffective assistance of counsel will be analyzed under these standards.

### I. Incorrect Information

Leftwich claims that trial counsel was deficient for informing him that Cpl. Conner, the State's key witness, would not be testifying because Cpl. Conner's wife was having a baby at the time of the scheduled trial. *See* ECF No. 1-1 at 22. According to Leftwich, trial counsel informed him that the circuit court denied the State's postponement request and further "advised" him that she did not think the State could prove its case without Cpl. Conner's testimony. *Id.* Leftwich avers that, as a result, he rejected the State's plea offer of seven years' incarceration[4] and opted instead to proceed to trial, where Cpl. Conner did, in fact, testify. *Id.* at 17, 23. Thereafter, Leftwich was found guilty and was sentenced to 21 years in prison.

During the post-conviction hearing, trial counsel testified regarding this issue and recalled that she had told Leftwich that Cpl. Conner, who was "essentially part of the chain of custody of the evidence was on the bubble list as to whether he would be a witness" because his "wife was due any day to have [a] baby and it looked like it was likely to come sometime during the middle of this trial." Tr. at 26-27, ECF No. 15-4. Trial counsel also stated that she told Leftwich, "without . . . Detective [Conner] there was going to be a break in that chain that could play out in his favor." *Id.* at 27. Trial counsel further testified that the State "offered a cap of five years" which Leftwich's mother believed Leftwich should accept. *Id.* at 28. When trial counsel informed Leftwich, however, he "indicated . . . that he did not want to deal" despite his mother's advice. *Id.* at 29.

In addition, trial counsel recalled that the State had filed a request for postponement, which the circuit court denied. *Id.* at 30. Trial counsel testified that when she asked Leftwich

---

[4] Leftwich also states that he later discovered that "the prosecutor ultimately amended the original plea offer of 7 years to a 5-year cap as . . . they were having trouble securing other witnesses . . . ." ECF No. 1-1 at 30.

9

whether he wanted the trial postponed, she advised him that "it was in our best interest if he still wanted a trial to stick with what we had because there was this chance that Detective [Conner] wasn't going to be able to testify." *Id.* at 30-31.

Leftwich presented this ineffective assistance claim to the post-conviction court, which rejected it as follows:

> It is clear from the testimony of [trial counsel] and [the prosecutor] that, pretrial as well as through the morning of the second day of trial, the best information was that the Detective was not going to be there but that, in fact, he was able at the last minute to arrange to be there. So the original information that he would be unavailable was not false at the times furnished, pretrial or by the morning of the second day of trial, it was merely overtaken by change in events.
>
> Mr. Leftwich ultimately made a tactical decision to go forward with the trial, and placed the bet to take the chance that the Detective would be unavailable based on the best information to that effect at the time furnished. Unfortunately for him, he lost that bet.
>
> […]
>
> This situation comes nowhere close to that in *Williams v. State*, 326 Md. 367 (1992) wherein trial defense counsel in discussing a plea offer to his client failed to inform him that if found guilty at trial, he was facing a 25 year mandatory sentence.
>
> As to these Allegations, a review of the record reveals that neither the State nor his trial counsel provided information that was false at the times given, as the Petitioner asserts. As sometimes happens with the dynamics of a trial and pregnancies, witnesses and babies are able to show up at times when they are projected not to. Because of their related exigencies the delivery of babies, like trials, are not always predicable with certainty. Thus, this Court rules that since these statements were not false at the time made, they did not [satisfy] the first prong of *Strickland* so as to constitute ineffective assistance of counsel, *i.e.*, a failure to meet acceptable standards of professional competency or the equivalent for Post Conviction purposes.
>
> Applicable law provides that if trial counsel has a sound tactical reason for his actions or inactions, a post-conviction court may not deem the action or inaction deficient. *State v. Matthews*, 58 Md. App. 243 (1984). Finding no false information was relayed by trial counsel, here going to trial instead of taking a

plea, and withdrawing the Motion for Mistrial on the hopes that a key witness would not appear because the witness's wife was to deliver a child the next day, was ultimately the Petitioner's significant tactical decision, which the holding in *Treece* [*v. State*, 313 Md., 665 (1988)] makes clear was Petitioner/Defendant's to make. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court placed the burden upon a petitioner to show that a claimed deficient act could not be excused as a trial tactic. Thus, the appropriateness of acts or omissions as trial tactics is a matter which the petitioner must rebut; it is not a defense the State has to prove. The genesis of the concept that a trial counsel could be excused for his actions on the ground that the action was an appropriate trial tactic was first mentioned in the case of *Woodell v. State*, 223 Md. 89, 96 (1960).

To qualify as a sound trial tactic, three requirements must be met:

1. The action or inaction was intentional.

2. It was reasonable for trial counsel to have believed that the action or inaction would produce desired objective. It must be shown that there was a reasonable basis for trial counsel to have believed that the action would produce the desired objective.

3. The objective was worthwhile.

This Court finds that three criteria were met. There was no false information provided, but information which was relayed and acted upon was that there was a true possibility at the time relayed to Petitioner that the key police witness might not appear, which the Petitioner heard and made the ultimate decision to go forward with trial and withdraw the Mistrial Motion. The situation changed, as the witness was able to appear; thus, Allegations as set out were not *Strickland* violations. *State v. Jourdan*, 22 Md. App. 648 (1974), *rev'd on other grounds*, 275 Md. 195 (1975). *See also United States v. Cronic*, 466 U.S. 648, 656-57 n.19 (1984) and *Wiggins v. State*, 352 Md. 580, 608, *cert. denied*, 528 U.S. 832 (1999)[.]

ECF No. 8-7 at 169-75.

The post-conviction court's ruling survives scrutiny under 28 U.S.C. § 2254(d). The decisions of counsel may be subject to second-guessing with the benefit of hindsight; however, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel, and there is a strong presumption that counsel's conduct was

within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. Here, the post-conviction court correctly noted that trial counsel's advice was not incorrect or misleading at the time it was given, and was based on a sound trial strategy. Thus, trial counsel's performance was not deficient, and Leftwich has failed to satisfy the standard set forth in *Strickland*. Having reviewed the record in light of the deferential standard of review applicable to 28 U.S.C. § 2254 proceedings, the court concludes that the state post-conviction court's decision did not involve an unreasonable application of federal law or an unreasonable determination of the facts.

## II. Sentencing Guidelines

Next, Leftwich asserts that trial counsel provided ineffective assistance by failing to prepare pretrial sentencing guidelines and to effectively advise him of "his risk exposure to incarceration via the applicable guidelines." ECF No. 1 at 7. Specifically, Leftwich claims that it was unreasonable for trial counsel to rely upon the "single larceny doctrine" in arguing that Leftwich should receive a single three-year sentence as to all counts. ECF No. 1-1 at 39. According to Leftwich, trial counsel's belief that the doctrine would apply amounts to "substandard performance" under *Strickland*, and does not excuse her failure to prepare pretrial sentencing guidelines. *Id.* at 40.

It is unclear whether Leftwich presented this exact claim to the post-conviction court.[5] During the post-conviction hearing, however, trial counsel recalled the theory upon which she proceeded with respect to attempting to mitigate the punishment for Leftwich as "the single

---

[5] Respondents attached as exhibits Leftwich's post-conviction petition as well as three supplements, but neither party attached his fourth supplement. The appendix to the statement of reasons memorandum denying post-conviction relief, entered on April 8, 2015, however, outlines 56 allegations of error, none of which appear to align with this claim. *See* ECF No. 8-8 at 3-21. That appendix does not refer to the fourth supplement, filed on April 7, 2014. *See id.;* ECF No. 8-1 at 18.

larceny doctrine." Tr. at 56, ECF No. 15-4. Trial counsel stated that she asked the circuit court to consider all counts as "one course of event," warranting a three-year sentence with the sentence for each count running concurrently. *Id.*

Leftwich also testified, albeit with regard to his claim that trial counsel "was deficient in not attacking the multiplicity and duplicity of the charging document." Tr. at 105, ECF No. 15-3. When asked whether trial counsel "attempted to convince a court that this was just one big crime not eight small crimes," Leftwich responded that trial counsel "should have argued the *Blockburger* [*v. United States*, 284 U.S. 299 (1932)] issue instead." *Id.* at 106. Leftwich also argued that he should have been charged with only one count of rogue and vagabond because he "only committed one crime," to which the court stated:

> And you know what, the attorney makes that argument, and the Court doesn't buy it, that's not ineffective assistance of counsel. That may be error on the part of the judge, but that's not ineffective assistance of counsel.
>
> You take the shot. A lot of lawyers argue things, sometimes, and, you know, we don't buy it all the time. Sometimes we're right, sometimes we're wrong, you know. That's life.

*Id.* at 91-92.

The post-conviction court thus concluded that trial counsel had sound tactical reasons for her action, a determination that is supported by the record. The fact that the tactic was unsuccessful or that Leftwich disagrees with his attorney's strategy does not establish ineffective assistance of counsel. *See Strickland*, 466 U.S. at 689. The post-conviction court's determination that counsel's actions were not constitutionally deficient is entitled to deference and will not be disturbed.

13

**CERTIFICATE OF APPEALABILITY**

Rule 11(a) of the *Rules Governing Section 2254 Cases* provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S. Ct. 759, 773 (2017). To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). Leftwich has failed to make a substantial showing he was denied a constitutional right, and this court finds that reasonable jurists would not find the denial of habeas relief in this case debatable. Therefore, a certificate of appealability shall not issue.

**CONCLUSION**

For these reasons, the court concludes the petition provides no grounds for habeas corpus relief. A separate order follows denying the petition and Leftwich's motions, and declining to issue a certificate of appealability.

   1/10/2018                                                                         /s/
Date                                                                                   Catherine C. Blake
                                                                                      United States District Judge